May it please the Court. My name is Peyton Healy. I represent Red Hook Communications in this appeal. As Your Honors are certainly aware, this case arises out of a breach of contract action where the underlying trial court dismissed on the alleged failure to comply with a dispute resolution procedure prior to filing suit. Your Honors, I respectfully submit that that ruling was in error for at least three reasons. The first is that it was a violation of settled Fifth Circuit law to first find a lack of ripeness and then to dismiss with prejudice. The second reason is based on the contract itself, section 7.3. I would agree with you on that. Just modify that, dismiss without prejudice, right? Yes, Your Honor. That would be fine. And we have actually pledged for that in our briefing. The second ground, Your Honor, is based on the provision of the contract itself. Section 7.3, we believe, does not actually preclude the activities such as filing suit in this case and does not stand as a bar to a filing suit. Third, the trial court erred by determining materiality as a question of law when it is, for the most part, a question of fact with very limited exceptions that do not apply here. What the district court could have done in this case, though, would have been to dismiss with prejudice for failure to state a claim instead of going on likeness. It did you a favor by going on likeness then. Well, Your Honor, it did dismiss with prejudice, but I actually respectfully disagree with Your Honor. I understand, but, I mean, if he had thought the same thing about the case, reached the same result, he could have done it by just dismissing on 12B6 with prejudice, right? No, he couldn't, Your Honor. Under the case, it's a Supreme Court case, and it is Steel Company v. Citizens for a Better Environment, 118 S.C.T. 1003 at pinpoint 1007. The Supreme Court has stated that you can't engage in hypothetical jurisdiction. You can't say, on the one hand, I'm going to assume I have jurisdiction and then issue it. No, I'm saying he could have said, I have jurisdiction over this because I have jurisdiction on the subject matter and over the parties, diversity case, and then not treated it as a jurisdictional issue at all, but as a failure to state a claim because you had not stated a claim under the contract. I understand that point, Your Honor. Where that gets a little bit dicey is... That's just hypothetical. Your Honor, under Hitt v. City of Pasadena, this Court's opinion, 561 Ft. 2nd. 606, and Crenshaw-Logel v. City of Abilene, 436 Ft. Appendix 306, when the Court is faced with, and this goes to your question, Judge, when the Court is subject matter jurisdiction and a Rule 12b-6 motion for failure to state a claim, not only has this Court held that the trial court must address jurisdiction first, even in the event you could grant both, you should only grant under 12b-1, and that is to provide the protection from inadvertently issuing advisory opinions, as Your Honor certainly understand. And Your Indicate in their briefing and motion to dismiss below, I believe, that when you have a failure to comply with the condition precedent, the result is dismissal. When you look at the case they cite, that is actually dismissed, the case is dismissed without prejudice. And that case is indicated as collecting cases. When you look at those underlying cases, they, too, dismiss without prejudice. And some of them with the expressed intention of, we are simply going to allow these folks to complete their dispute resolution procedure, and they can refile if they so choose. Those cases are cited in the briefing, but I can otherwise let Your Honors know what they are. Moving on to the provisions of the contract itself, Section 7.3 is the dispute resolution procedure at issue. The first ground where we believe that it does not apply is that it states, it only precludes the indemnified party here on site from filing suit after the 60-day dispute resolution procedure. The bar to filing suit does not apply by its terms to the indemnifying party here, my client. The only obligation in Section 7.3 with respect to Red Hook's obligation is simply a duty of good faith. That is typically a question of facts. I think that's a weak argument. It's... Because, I mean, one, I mean, a defendant is never going to, I mean, a defendant is indemnitorial, right? So he's not going to necessarily proceed to exhaust remittance because he's not going to, he doesn't have a claim. The other person has the obligation against indemnity, but also the provision in the contract says that both of you shall work together. Yes, Your Honor. It does say you both shall work together in good faith, and that good faith is a question of fact, typically for the jury. Importantly on that ground, the trial court below indicated that filing suit was a lack of good faith, essentially as a matter of law, but I feel like that fails to consider the totality of the circumstances leading up to this where Red Hook was effectively strung along, or at least a jury could find that Red Hook was strung along for... A lack of good faith, but, I mean, you just jumped the gun. I see that, and that's where I disagree, Your Honor, because one, there is no bar to filing suit, right? So in this case, you have the initial $100,000 that was held back for no apparent reason other than that on-site just simply wanted to keep it for five weeks. Initially, the $100,000. Yes, Your Honor. Yeah, but you took that money and you've waived that argument. You took the money. We took the money, and we have waived an argument based on materiality on that front. I agree with you there, but what I would say is a jury looking at whether good faith was used in the resolution practice here should include that fact because Red Hook didn't receive $100,000 that it had every right to for a period of five weeks. Following that, you have the $77,000 demand that remains outstanding and was simply ignored. Well, I mean, it felt like the rest of it did because there'd been no efforts on the part of either party to reconcile or to reconcile their positions on the $77,000. Well, see, and that's a timing issue because the $77,000 issue was raised way back in January, and there never was a response to that one, Judge. So to the extent that... No, but who initiated? That was your claim. That was our claim, Your Honor, yes. And you would have said, and so you've served it on the other party. That's right, Your Honor. And you should have said, let's talk about this under the contract. I mean, it was your obligation to start the negotiations. Why didn't you? We did send a, under the contract, a specific indemnity notification for that money. That did happen, and that happened way back in January, Your Honor. What's the status of this case now? I mean, the relationship between the parties? Not good, Your Honor. Can't imagine that. The trial court indicated in its opinion, on the second half, the 12 v. 6 half, that Onsite and Red Hook would be free to go and pursue that $600,000. Well, lo and behold, the $600,000 was not paid, and so we have currently a state court proceeding where our client is seeking that $600,000 also that wasn't paid. In state court? Yes, Your Honor. So good faith, in my view, would include those other facts, those other very, very late payments. It would also include the fact that in response to that indemnity demand, there was an e-mail response back saying, you know, this is very tenuous. We request your documents. And we set a deadline. We would like to, because they should have had it way back at the beginning. These are things, what's alleged in the indemnity demand are clearly things that were known upon taking over the company. This is stuff through their due diligence and through the fact that they obtained the employees of Ellipse Communication, now Red Hook, that they were aware of way back in September. So they were generated, or this, what we call a pretext, was provided immediately before the $200,000 was due. A deadline for providing the documents was given. Onsite ignored it. And then a couple of weeks later, they merely shoot back an e-mail and say, well, we're looking into it. So we're looking for documents, I believe is what it says. So, Your Honor, your point about filing suit not being a, you know, you know, a point against good faith, I think is fair. But then you look at the fact that we also provided an answer extension. And, you know, there were discussions on this, and a deadline to answer was extended in this case. And under defendants' own, onsite's own cited case, tattoo art, the tattoo art case, that extension is a signal of good faith. So if you go in and kind of dig into that case, you'll see that that was one of the facets. Moving on to the second part of Section 7.3, that requires the indemnity demand to be made within 60 days of discovery of the grounds for the indemnity. As we've pled here, these items were not provided until immediately before the $200,000 payment would have otherwise been paid. And so... Was that point litigated at the district court? Yes, Your Honor, it was. I believe it's even discussed in the court's opinion at 287. And what was the finding of the district court with respect to your position? On that issue, the, and I don't mean to, I'll get to the answer. The, there are two prongs to this. The first is that you have to raise it within 60 days of discovery. The second is that damages must be shown thereby, right? So the trial court simply said, well, no damages have been shown. And I believe that's improper. One, because the extent of damages is an argument for the jury. Two, even at the very least, interest on $200,000 over that period is $5,000. It's a small amount of money, but it does exist. More than that, had it been brought up in the proper time, all of these steps could have gone, been gone through and some portion of that $200,000 likely would have come down. We believe, you know, as we've pled, this is a pretext. We believe we can show all of this, or most of it is false. And so we have shown damages by the delay in that case. And that's why Section 7.3 by its own terms, by their failure to bring these up within 60 days of discovery, dooms application of 7.3 on its own terms. But now are you essentially conceding by making that argument that it is necessary to follow the contractual time limits for bringing it up for negotiations and attempt to settlement before suit can be instituted? No, Your Honor. By that, I am not conceding that because there is a distinction here with regard to the bar to filing suit. The indemna on-site is barred from filing suit for 60 days. The contract does not specifically say that we may not file suit within 60 days. Of course, the dispute- But it does give you all of these things you have to do as condition precedent to filing suit, doesn't it? I don't take issue with it being a condition precedent. And in our pleading, we pled compliance with conditions precedent in this case. And the court found you hadn't? The court determined that we had failed to follow a condition precedent being the dispute resolution procedure. And the reason that- Doesn't this case turn on that? It does turn on the issue of, if that's the case, Your Honor, then we're back to the 12B1 unrighteousness problem. And it should simply be dismissed without prejudice, which for judicial economy also makes sense because- Okay. I mean, is that- If you get this case dismissed without prejudice, then you feel like you're walking away with a satisfactory result? Yes, Your Honor. And I'll tell you why. One is- I mean, that seems pretty simple. I agree, Your Honor. One reason is simply- I mean, it seems to me that maybe I'm wrong about this. I'm sure I'll be told that if a case is not right, the automatic thing to do is dismiss it without prejudice. That's what this court's precedent holds, including it versus City of Pasadena. And that is what you'd be satisfied with. So- Yes, Your Honor. We'll hear about that from the other side. For judicial economy, it makes sense too. A lot of quick solutions. I am offering one to Your Honors. Moving on to the issue of materiality, I'm short on time, so I'll just address this to the extent that I can. Materiality is typically a question of fact for the jury. The one major exception is the Mustang Pipeline case. And that's a time is of the essence clause, which under Texas law is material as a matter of law. There is no such exception for that point here. One of the factors in materiality that I think is very crucial here is the extent of forfeiture. Essentially, Red Hook is being required to forfeit $277,000 based on, you know, Section 7.3, which, you know, maybe you have an ambiguity in that, but even that is a fact question in terms of whether there was a bar to file in suit or not, or whether you act in good faith or not. So the forfeiture is high. The chance to cure is also very high. Courts considering dispute resolution procedures permit dismissal without prejudice to allow the balance to occur. That happened. That happened in Tattoo Heart. Let me go back to this other thing that I had on my mind so I can follow your other arguments. Did you suggest to the district court that it should amend its judgment to be without prejudice? No, we did not say that to the district court. It was raised in the briefing that a lack of rightness does not adjudicate the merits of the case. Even on-site's briefing says that. I say that I'm out of time. I thank you, Your Honors. All right, thank you. You've reserved your but a bottle of time. All right, Mr. Williams. Is there any reason we shouldn't amend the judgment to be without prejudice? May it please the Court, Your Honor. Your Honor gets straight to the point. I'll address that point exactly. We don't think that amending or modifying the ruling before to make a dismissal without prejudice would be sufficient or would be appropriate, and here's why. Words matter. People intend to say what they mean. You like what the district court said when it adjudicated the rights of them to attack the $200,000. Is that what you're saying? What I'm saying, Your Honor, is the parties entered into an agreement with a specific dispute resolution provision. Red Hook chose not to abide by that dispute resolution provision. That resolution provision set out a process, a procedure, for the parties to follow to try to resolve disputes before filing suit. This is analogous to a Title VII action. In a Title VII action, before a plaintiff can bring an action in court for discrimination, he has to go to the EEOC and has 180 days to file that charge. If he doesn't file his charge with the EEOC within 180 days, he loses the opportunity to bring his action in court. If he brings his action in court, the court can dismiss with prejudice. This is an analogous situation here. We set up a procedure to be followed. That procedure was give notice. Would you concede that, generally speaking, if a court dismisses a case on the basis of rightness, the appropriate order is without prejudice? I will concede that I have not found a case where a case has been dismissed for rightness and the Court of Appeals have found that it should have been dismissed with prejudice. I will agree with you. But this is not a typical rightness issue. Typically, rightness occurs when the underlying cause of action has not yet occurred. The injury has not yet occurred. Here, the injury has occurred. The parties were to negotiate in jump the gun and file a suit. To go back and say the dismissal should be without prejudice does not cure anything. This is an uncurable defect. You want to penalize them for not doing what they agreed to do. They don't get the second bite at the apple. You made an election not to abide by the agreement. You didn't do it, so you don't get to do that. Then, later, a court says, well, go back and do it because you say that runs counter to the whole point of the negotiated process, right? Well, we're not asking to penalize. I shouldn't have used penalize, but you want to enforce the agreement that they bargained for against them rather than them getting a second chance to do what they should have done in the first place. We want to receive the benefit of the bargain that we struck. The benefit of that bargain was you have a period of time within which to negotiate and backing up a step. Part of that process was you send a notice of a claim. The other party has a certain period of time within which to either object or not object. If they don't object, they are deemed to have accepted that that claim is to the claim that we made. Therefore, under the agreement, under the bargain that we struck with this contract, they are deemed to have accepted the propriety of the charge that we made. Now, they want to come in and undo everything. We're not seeking to penalize them. They're seeking to penalize us. If we dismissed it without prejudice, I don't think that would reach, or maybe it would, I shouldn't say, reach the question of whether you could raise these defenses that you're suggesting now. I mean, because without prejudice means the result that we reached here does not prejudice you. You're absolutely right. It doesn't mean that your conduct, your conduct led to that may not be used against you. Absolutely. If the case were dismissed without prejudice, you would, you would, retain those defenses. However, the problem is, first of all, the reason the dispute resolution procedure was put in place was to allow the parties, this was a complicated commercial transaction, so the dispute resolution procedure was put in place to allow parties to work out problems that may arise without running to the courthouse, without engaging counsel at our expensive rates and incurring legal fees, but rather keeping things on a business level and allowing the business people to come together and resolve disputes. Red Hook chose to ignore that. They chose not to do that, and they should not be rewarded with saying, okay, you can ignore the dispute resolution provision that was specifically negotiated, which was part of the benefit of the I mean, at this point, it's effectively negotiating with a gun to an on-site's head because the lawsuit has already been filed. The lawyers have already been engaged. The legal expenses have ramped up. All of that was intended to be avoided by the dispute resolution provision that Red Hook has ignored. So what is the, your interpretation of the contract's because of their doing that? Forfeiture? It is, there's one of two ways of looking at it. One would be to say forfeiture. I would say, first of all, because Red Hook never timely objected to the claim that on-site made, then under the terms of the agreement, Red Hook is deemed to have accepted those charges, to have accepted that the claim was appropriate. So they've already, they already made their choice. It's not so much a case of forfeiture as it is they made a choice of accepting the claim that on-site had made, and now they're trying to back out. All right, if we don't say this was without prejudice, but say it was, is that what happens? Is that what happens? What you just described? Yes, well, well, if the court, if the court upholds the trial court and says that dismissal with prejudice was appropriate, then you can have one of two conclusions. Either A, that, and I think this really is appropriate, is that Red Hook accepted the charges by not timely objecting. But even if, but even if you put that aside, then yes, you would say that, that the alternative is they forfeited, that they forfeited their ability to come forward with, with a claim. Wouldn't that say in the same thing a different way? If they forfeit their ability, then they accepted. It probably is, Your Honor. It certainly is the same result. It certainly gets to the same result. And what Judge Wiener suggested is exactly what y'all are arguing about, thinking that the district court in its opinion said, and that is that by breach of contract, they had lost their obligation, they had forfeited their obligation, their right to contest your $200,000, their $200,000 claim for payments. That is correct. So it's the same thing like Judge Wiener points out. Right. It's, it's two paths that get to the same result. They get to exactly the same result. Now, the other, the next problem that Red Hook has with their argument is Red Hook tries, tries to make the argument, states the argument, that somehow Section 7.3, that, that the, the, the bar to the lawsuit does not apply to them because they are not the party seeking indemnification. That simply is wrong. If Your Honor. That makes sense. Well, here's why it's wrong. The agreement, and the agreement is in the record, Section 7.2 of the agreement, which is in record at page 223, sets out indemnification by the buyer. So the, so these are conditions where the buyer, in this case Onsite, would owe indemnification to Red Hook. And one of the reasons that the buyer that Onsite would owe indemnification to Red Hook would be if Onsite is alleged to have breached any agreement under the contract. That is, that is set out in Section 7.2. Well, that's what this lawsuit really is. Red Hook, the seller, is saying that Onsite, the buyer, breached the agreements by not paying the holdback money. So they are the party seeking indemnification under the allegations that they've made in their lawsuit, and yet they have completely ignored the dispute resolution provisions that now they're saying don't even apply to them. So the dispute resolution proceedings and the bar to suit do, in fact, apply to Red Hook. In terms of the timing of the indemnity demand, again, this argument is a red herring. What the contract says is, the contract says that a party will make an indemnity demand or claim within 60 days of the learning of a dispute or learning of a loss, but then it goes on to specifically say, but if they don't, if you don't make your demand in time, that does not bar you from still coming out and asking for that claim, making that claim. Red Hook simply wants to rewrite or ignore the This is a very straightforward case. It's a contract. The parties were sophisticated parties in coming up with the terms of the contract. They included a carefully negotiated dispute resolution provision. It is the policy of the courts, certainly it is the policy of the courts in Texas, to encourage parties to resolve their alternative dispute resolutions, dispute resolution provisions, and contracts are a favored policy in Texas. The court was correct in dismissing the case because Red Hook had jumped the gun and did not comply with the dispute resolution. The court was correct to make that dismissal with prejudice because the bail could not be unwrung, the calendar could not be rolled back, the timings that was set out in the dispute resolution provision had passed. This was an uncurable defect. So dismissing the case with prejudice was the proper result. As I stated, words matter. The words of this contract matter and the parties should be bound to live by the words that they agreed to. All right, now you're obviously not very happy about the fact that you've been put to a lot of expense, your client's been put to a lot of expense because they did not follow what you considered to be the terms of the contract to avoid these expenses. Now if we hold that the cases should be dismissed without prejudice, do you have any remedy to come back against them for the failure to give you what you call the benefit of the bargain by their jumping the gun? That's an interesting question and on the one hand, certainly with respect to economic damages, the cost of attorney's fees, those would certainly be things that we would assert, whether it be in the form of a counterclaim or cross-claim, I don't know. But there are non-economic injuries as well. There is the injury to reputation. Onsite has a reputation and does business with a number of companies and by being sued prematurely, they now face the prospect of having other companies that they do business with look at them and say, you don't abide by contracts, you've been sued for breach of contract over here, you were sued for not paying your financial obligations. That's an injury that we should not have suffered and we can't be compensated for. What is the service that the two of y'all provide? What kind of? The service is basically computerized management services for lease properties. So if you own lease properties, whether it's office properties, apartment properties, rental properties, you could hire onsite management to come in and include electronic computer services, which is what we purchased from Red Hook. Okay. Thank you. Without anything further, Your Honors, we would respectfully request that the court affirm the trial court below. Thank you, sir. Back to you, Mr. Healy. Your Honor, his theme was that words matter. Below, before the trial court, onsite specifically informed the trial court that it did not have subject matter jurisdiction to consider this dispute and as such, it could not resolve the merits of the dispute. So if words matter in this case, the argument they made before the trial court is something that matters because that's what the trial court should have done. If it found a lack of ripeness, which it did, dismissal should have been without prejudice because by ruling on the merits, you have an improper advisory opinion. The district court really didn't. I read the district court's opinion. It really didn't rule on the merits. It was just citing diverse and sundered reasons for materiality. It did, in fact. One of the reasons for materiality was that you could be, could lose your right to contest the $200,000. Right, and the trial court did at the, toward the beginning of the opinion, did determine based on ripeness that there was a, that the controversy was not presently justiciable. And so, Your Honor, I'd like to address his counsel's argument that this is a uncurable failure that's simply wrong. Courts throughout the United States have permitted dispute resolution procedures that were not complied with previously to be complied with after a motion to dismiss, I'm sorry, after a dismissal without prejudice. For example, B&O Manufacturing v. Home Depot, 2007 Westlaw 323-2276. That permitted the dispute resolution to occur. Mortimer v. First Mount Vernon Industries Association, 2003 Westlaw 233-05155. And one more, Lonecraft LLC v. First Choice Loan Services, 2012 Westlaw 628-617. Your Honor, the reason I go into that amount of detail is because courts throughout the United States hold that when one of these dispute resolution procedures is not complied with, dismissal is without prejudice, and the parties may go forward with that. To the from this breach, that's something that they can and frankly have raised in the state court proceeding. That's none of these arguments that he has made about the issues, the problems, is something that cannot be raised in a lawsuit filed as this will be without prejudice. So as a practical matter, how, if they have to go back, will they prove in a dispute resolution procedure what this time delay has caused them, cost them? You're putting, I mean, it's been a while you've gone to district court, and now here, if you go back there, what do you do about those years that they're out there as a breach? Well, one thing I am certain that they will argue is that they're entitled to their attorney's fees. I think you could likely value the value of the dispute resolution procedure itself. I think experts could likely look at contracts where you have an asset sale under such a circumstance and one without, and determine the relative value of that. That's something that I believe an expert could likely do, and that would also delete the amount of time that, you know, an extension was granted to permit some negotiation to take place. So there are ways that you could value that issue, Your Honor. None of these things cannot be sought before the state trial court proceeding that is between these two exact entities discussing this same contract dealing with most of the very same issues, Your Honor. If nothing else, they're curable with money, right? That's true, Your Honor, frankly. It's almost like an irreparable injury argument. It's almost like a temporary injunction. None of these things are irreparable. They are things that they may seek in the proceeding that's currently ongoing, and I'm sure will, Your Honors. So if you have any All right. Thank you, sir. Thank you, Your Honor. That concludes the orally argued cases for today. They will be submitted along with the non-orally argued case, and that will complete the work of the panel for today. That being the case, the panel stands at recess until 9 a.m. tomorrow.